On March 9, 1936, E.W. Rappeport secured a judgment against Tom C. Patten in the District Court of Rusk County, Texas, for the amount of $628.75, with interest at the rate of 6% per annum from date of judgment. On February 13, 1937, Rappeport instituted proceedings in the District Court of Caddo Parish, Louisiana, bearing No. 70,977, alleging on said judgment and also alleging that the cost of certifying a copy of said judgment and bill for costs was $2.25. He alleged the judgment was executory and that he was entitled to have same recognized and enforced in accordance with the laws of the State.
Rappeport further alleged that Tom C. Patten was a non-resident of the State and *Page 498 
that an attachment was necessary to protect him in the premises and that a curator ad hoc should be appointed to represent the absentee. He prayed for a writ of attachment to issue and that all property of whatever nature owned by Tom C. Patten and situated in Caddo Parish, Louisiana, be seized and taken into possession by the Sheriff of Caddo Parish and that there be judgment in his favor against defendant in rem in the sum of $635.50, with 6% per annum interest from March 9, 1936 until paid and all costs, and that plaintiff's lien and privilege on the seized property be recognized, the seized property be sold and plaintiff's claim paid by preference and priority over all other persons whomsoever.
Judgment was obtained in this proceeding by default as prayed for.
In the above proceedings a mineral lease was attached and after judgment it was advertised and sold for the sum of $200, the purchaser being the defendant, Tom C. Patten. After deducting costs and curator's fee, a balance of $154 was applied on the judgment held by plaintiff.
On March 14, 1940, plaintiff instituted another suit against Tom C. Patten, numbered 79,513 on the docket of the District Court of Caddo Parish, Louisiana, wherein he made the same allegations he had made in the former suit, No. 70,977, with the additional allegation that the Texas Company was indebted to the said Patten or had property in its possession or control belonging to him, and that it should be made garnishee and required to answer the annexed interrogatories. He prayed for a writ of attachment to issue and for the Sheriff to attach and seize any and all property found in Caddo Parish belonging to the said Patten. He also prayed for judgment against Patten in the amount of $630.50, with 6% interest per annum from March 9, 1936, less a credit of $154 and for all costs, with the other usual prayer in such a suit.
Under the said writ of attachment, the Sheriff seized an $8,000 oil payment due Patten to be paid out of 1/8 of 7/8 of the oil, gas and other minerals taken from an 80-acre lease in proven territory of Caddo Parish, Louisiana. The Sheriff also seized the interest of Grace H. Patten, defendant's wife, in the same mineral reservation. He also seized the same interest of Patten in a $10,000 oil payment out of the oil or gas produced from another lease in Caddo Parish, which actually produced oil. The seizures were made on May 18, 1940.
The Texas Company answered the interrogatories propounded to it and admitted that it held in its possession and was indebted unto Patten in the sums of $14.29 and $99.30. Defendant came into court and filed a motion to dissolve the attachment on several grounds; the principal one he relied on was that he was a resident of Caddo Parish, Louisiana, and not a non-resident. The lower court sustained the motion to dissolve and on suspensive appeal to this court, the judgment of the lower court was reversed on June 18, 1941 and the motion to dissolve overruled. The case was remanded for trial on its merits. See 3 So.2d 909. On the merits the lower court awarded judgment for the plaintiff as prayed for, sustaining the writ of attachment and, since defendant had made appearance by answer, a personal judgment was rendered against him.
On May 25, 1940, just seven days after the oil payments were seized by the Sheriff, Tom C. Patten transferred to the Southern Oil Gas Company, Inc., a Louisiana corporation, the $10,000 oil payment which was under seizure, the consideration reciting $10,000 and other valuable consideration. On July 16, 1940, the property seized under attachment was bonded by defendant, the bond being for $1,000 and signed by Tom C. Patten as principal, and Southern Oil Gas Company, Inc., per Tom C. Patten, President, as surety. The amount of bond to secure the release was agreed to by counsel for plaintiff in writing. After this last judgment became final, plaintiff had issued a fieri facias, No. 70,977, the number of the first suit. The return on said fi. fa. made by the Sheriff is as follows:
"Received the within Writ of Fieri Facias on the 11th day of October, 1941, found no property to seize, I called upon the last judgment debtor, Tom C. Patten, to point out the property which he may possess in this Parish; on this application the said Tom C. Patten showed me no property; I then demanded of the plaintiff to point out property belonging to the judgment debtor and said plaintiffs being unable to point out any and upon instructions plaintiff's attorney, I hereby declare that I have found no property to seize notwithstanding the demand made on the *Page 499 
parties and made this return of nulla bona this the 15th day of October, 1941.
"C.H. Messer "Deputy-Sheriff "Caddo Parish, La."
This return is dated October 15, 1941.
On October 16, 1941, counsel for plaintiff addressed the following letter to Patten and his surety on the bond:
"Gentlemen:
"Re: Rappeport v. Patten
"The judgment rendered in the above case has become final. A writ has issued against Tom C. Patten and has been returned unsatisfied.
"The appeal bond was furnished by the Southern Oil Gas Company, Inc., as Surety, and this letter is to demand of both principal and surety, payment of the judgment in the above cause.
"Failure to comply immediately will cause the issuance of a rule."
There was no response to the letter and on October 25, 1941, plaintiff by rule asked for judgment against the surety on the bond, Southern Oil Gas Company, Inc. He alleged in said rule that Patten had disposed of the property that was under seizure and that it was no longer available to the execution by him. This proceeding also bore the number of the first suit, 70,977.
Defendant in rule filed exceptions of no cause and no right of action for the alleged reason that the rule had been filed in the wrong suit. The lower court overruled the exceptions and, at the suggestion of plaintiff in rule, ordered the number on the fi. fa. and the rule changed to No. 79,513, the correct number of the last suit. Defendant then answered setting up the following defenses:
1. That Tom C. Patten was without right or authority to execute a bond on behalf of Southern Oil Gas Company, Inc., and that his said act was ultra vires null and void and of no effect;
2. And in the alternative, if the said act of Tom C. Patten is held valid, then the bond is defective in that it was assigned to plaintiff by J.H. Flournoy, Sheriff, by Deputy, of date July 17, 1940, whereas the bond is made payable to T.R. Hughes, Sheriff of Caddo Parish, Louisiana.
Although Tom C. Patten is not made a defendant in rule, he appeared and filed answer setting up the same defenses as Southern Oil Gas Company, Inc.
The lower court, after hearing the testimony on trial of the rule, rejected plaintiff's demands. It granted a rehearing and rendered judgment for plaintiff in rule as prayed for against Southern Oil Gas Company, Inc. From that judgment defendant is prosecuting this appeal.
Since the same defense set up in the exceptions is set out in the answer, it is unnecessary to discuss them separately. We are of the opinion the contention of defendant that the fi. fa. and rule are without effect, because an erroneous number was given, is without merit. We are unable to find any law which requires a number to be given any pleading and it is our opinion the number is only for the convenience of the Clerk of Court and is given the pleading by the Clerk. If no number at all had been given the pleading or fi. fa., it would not have invalidated them. While it is true the fi. fa. was issued against Tom C. Patten in rem, the Sheriff in executing it disclosed by his return quoted above that Patten did not own any property of any kind and therefore accomplished the purpose of the fi. fa. That the return was correct is conclusively shown on the trial of the rule. The only property of any kind owned by Patten and subject to seizure were the $10,000 oil payment and his stock in the Southern Oil Gas Company, Inc., both of which he had disposed of before issuance of the fi. fa.
Southern Oil Gas Company, Inc., does not contend that Patten owned any property nor does it ask for a discussion of his property. It contents itself with relying on the fact that the fi. fa. and rule were issued under an erroneous number. The Southern Oil Gas Company, Inc., was not surety on any bond in the first suit, No. 70,977, and could not have been misled as to the suit in which the rule was issued. It was neither prejudiced nor misled by the erroneous number placed on the documents. This is further borne out by the fact that defendant in rule did not request a continuance when the lower court ordered the erroneous number on the pleadings changed to the correct one. The lower court, therefore, was correct in overruling the exceptions and rejecting the alternative defense set up in the answer.
One of the two remaining questions is whether or not Tom C. Patten was *Page 500 
without authority as President of the defendant corporation to bind it as surety on the bond releasing the property from seizure under the writ of attachment. The plea of ultra vires is an affirmative defense and is never sustained when the corporation is benefited by its acts or that of its officers and retains benefits acquired by its ultra vires acts. If the rule were otherwise, it would be unconscionable. However, in this case there is no evidence to show the act of the President of defendant corporation was ultra vires its charter. The charter, by-laws and minute book of the corporation, which would have shown the power and authority of its officers, were not offered in evidence and Tom C. Patten, its President, testified: "I have general authority to do all acts pertaining to the corporation."
There was offered in evidence a resolution signed by Tom C. Patten, President, and Grace H. Patten, his wife, as Secretary, which gives broad powers to the President in acting for the corporation. It is as follows:
"State of Louisiana "Parish of Caddo —
"This is to certify that at a meeting of the Board of Directors of Southern Oil Gas Company, Inc., held at its domicile in Shreveport, Caddo Parish, Louisiana, on the 25th day of October, A.D. 1939, all members being present, the following resolution was unanimously adopted:
"Be it resolved by the Board of Directors and corporation that Tom C. Patten, President of the Corporation, be and he is hereby authorized to enter into any and all manner of contracts for and on behalf of the corporation in connection with the company's business such as drilling contracts, or any other undertaking necessary and incidental to the corporation's business as set forth in the objects and purposes of its charter; to borrow money for and on behalf of the corporation and to bind the corporation in connection therewith by the execution of mortgages, chattel mortgages or bills or notes of exchange or such other instruments as may be necessary.
"Be it further resolved that the President of the corporation shall have authority to deposit all money belonging to the corporation in the bank and to withdraw the same by the signing of checks.
"In witness whereof the President and Secretary have hereunto subscribed their names in their official capacities, and hereunto affix the seal of the corporation on this the 25th day of October, A.D. 1939."
It is not surprising that such broad powers were given him when we find that he and his wife owned all the stock in the corporation, with the exception of one share. His wife acquired her stock during the existence of the community of acquets and gains between her and her husband. It is not shown that she acquired said stock with her separate paraphernal funds, and we can well assume, under the law, that her stock was community property subject to the control of her husband. It is evident, to our minds, that the corporation was organized for convenience sake and for the purpose of avoiding personal liability by Mr. and Mrs. Patten in their various transactions in oil and gas.
While we are of the opinion that defendant has failed to show that Patten's act in binding the corporation as surety was ultra vires and could end this opinion here, we prefer to show where the corporation benefited by being made surety on the bond. Prior to the time it became surety, Patten had transferred to it all the property which was under seizure and which was released when the bond was executed. Therefore, by becoming surety on the bond, it secured a release from seizure of its own property which it soon thereafter disposed of for a valuable consideration. The $10,000 oil payment was assigned by it to its creditors to be held by them until they were fully paid and then to be reassigned to the corporation. The corporation received all the benefits brought about by the release of the seizure and, without offering to place matters in status quo ante, attempted to be relieved from liability. It would be a most unjust law that would allow such procedure.
Defendant lastly contends that the assignment of the bond to plaintiff by the Sheriff was defective because it was made payable to T.R. Hughes, Sheriff, and assigned to J.H. Flournoy, Sheriff, without the endorsement of T.R. Hughes. There is no merit to the contention. The lower court correctly rejected it in the following language: "The bond was made out to the Sheriff and if the name was incorrectly stated, that was corrected by the assignment by the party who acted as Sheriff. An official bond does not bear any personalities." The facts are a printed bond *Page 501 
was used and the blanks filled in, the printed bond being one left when T.R. Hughes retired as Sheriff, and his name was printed in the bond as Sheriff of Caddo Parish, Louisiana. At the time the bond was executed, J.H. Flournoy was Sheriff and accepted the bond, later assigning it to plaintiff.
We find no error in the judgment of the lower court and it is affirmed, with costs.